UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

    Plaintiff/Respondent,

v.

Antonio Carlos De Godoy Buzaneli,

    Defendant/Petitioner.

MEMORANDUM OPINION
AND ORDER
Crim. No. 17-284(01)

---

    Kimberly A. Svendsen, Assistant United States Attorney, Counsel for Respondent.

    Michael McDonald, Counsel for Petitioner.

---

This matter is before the Court on Petitioner's motion to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255. [Doc. No. 141] An evidentiary hearing was held on October 28, 2010, and the parties have filed post-hearing briefs.

**I.    Background**

On April 19, 2018, Petitioner pleaded guilty to Count 1 of the Indictment which charged Conspiracy to Commit Mail Fraud in violation of 18 U.S.C. § 1349 and admitted that he was a participant in a criminal conspiracy that defrauded

1

investors of more than $100 million.  On April 9, 2019, Petitioner was sentenced to a term of 240 months imprisonment.  At his sentencing hearing, the Court advised Petitioner of his right to appeal his sentence, and that counsel, Daniel Scott, would be his attorney on that appeal, or he could hire another attorney[1].  (Doc. No. 148 (Tr. at 40).)  The Court further advised Petitioner that if he could not afford an attorney, he could request a court-appointed attorney at no cost to him, or that he could represent himself.  (Id.)  Finally, the Court informed Petitioner that he was "ordering Mr. Scott to give notice to the Court of Appeals forthwith within the 14 days so your appellate rights are protected."  (Id.)

In his verified petition, Petitioner alleges that following his sentencing, he unequivocally requested defense counsel, Daniel Scott, to file a notice of appeal yet counsel failed to do so.  Petitioner further alleged that counsel misrepresented to Petitioner that his intent was irrelevant to whether he was guilty of participating in a scheme to defraud.  As a result, he pleaded guilty to a crime for which he was actually innocent.

In response to Petitioner's claim that he requested Scott to file a notice of appeal on his behalf, Scott submitted an affidavit in which he asserts that he sent

---

[1] Scott was retained as counsel, not court-appointed.

2

Petitioner a letter outlining his appellate rights. (Doc. No. 153 (Scott Aff. ¶ 7, Ex. 1).) Scott further asserts that he met with Petitioner at the jail to further discuss a number of issues, including the issue of filing a notice of appeal, and that Petitioner wanted to discuss the issue further with his wife. (Id. ¶ 8.) On the date the notice of appeal had to have been filed, Petitioner's wife informed Scott that Petitioner had decided not to appeal. (Id. ¶ 10.) Scott further asserts that at no time did Petitioner request Scott to file a notice of appeal. (Id. ¶ 11.)

Because Petitioner filed a verified petition asserting that he did ask Scott to file a notice of appeal and that Scott failed to do so, the Court held an evidentiary hearing in order to make a ruling on the credibility of Petitioner's claim.

## II.  Standard of Review

Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Section 2255 is intended to provide federal prisoners a remedy for jurisdictional or constitutional errors.

Sun Bear v. United States, 644 F.3d 700, 704 (8th Cir. 2011).  It is not intended to be a substitute for appeal or to relitigate matters decided on appeal.  See Bousley v. United States, 523 U.S. 614, 621 (1998); Davis v. United States, 417 U.S. 333, 346-47 (1974).

> Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.  A movant may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error.

United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (citations omitted).

Claims of ineffective assistance of counsel may constitute the "cause and prejudice" required to excuse otherwise procedurally defaulted claims. Boysiewick v. Schriro, 179 F.3d 616, 619 (8th Cir. 1999).

**III.   Discussion**

    **A.   Ineffective Assistance of Counsel**

Claims of ineffective assistance must be scrutinized under the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  Under the Strickland test, Petitioner must prove that: 1) counsel's representation was deficient; and 2) counsel's deficient performance prejudiced Petitioner's case.  Kingsberry v.

United States, 202 F.3d 1030, 1032 (8th Cir. 2000) reh'g and reh'g en banc denied, (March 28, 2000).

To satisfy the first prong of the Strickland test, Petitioner must show that counsel's representation fell below an objective standard of reasonableness under professional norms. Strickland, 466 U.S. at 688. The inquiry should be whether counsel's assistance was reasonable considering all the circumstances surrounding the case. Id. Judicial scrutiny of counsel's performance should be highly deferential, and the general presumption is that counsel's conduct "falls within the wide range of reasonable professional assistance." Id. at 689.

To satisfy the second prong under the Strickland test, Petitioner must show that but for counsel's errors, the outcome of the proceedings would have been different. Id. at 691.

### 1. Failure to File Notice of Appeal

At the evidentiary hearing, Scott testified consistent with his affidavit. He testified that pursuant to the Plea Agreement, Petitioner agreed to plead guilty to Count 1 of the Indictment, and in exchange, the government would move to dismiss the remaining 12 counts of mail fraud. By pleading guilty to one count, Petitioner was subject to a statutory maximum sentence of 240 months. Thus,

even though Petitioner's sentencing guideline range was calculated to be 292 to 365 months, Petitioner could not be sentenced to a term of imprisonment higher than 240 months.  Had he been convicted of any of the other counts, the statutory sentence could have been stacked, and Petitioner could have received a substantially higher sentence.

After Petitioner was sentenced, Scott testified that he did not have the opportunity to speak with Petitioner right after the hearing.  Once the Judgment and Commitment was filed, Scott sent Petitioner a copy of that document with a letter outlining the terms of his sentence, which included a 240 month prison term and a restitution requirement in excess of $51 million. (Doc. No. 153, Ex. 1.) In the letter, Scott further explained that as a matter of law, he could file a notice of appeal, and that the notice would have to be filed by April 24, 2019. (Id.)  Scott informed Petitioner that while he was obligated to file the notice at Petitioner's request, Scott was not obligated to pay the $455 filing fee.  (Id.)  Scott further explained that while he could file a Notice of Appeal, Petitioner had agreed to an appeal waiver in his Plea Agreement if he was sentenced to 240 months or less. As Petitioner did not move to withdraw his guilty plea, and because Petitioner

was sentenced within a properly calculated sentencing range, Scott informed Petitioner it was likely the appeals court would enforce the waiver.  (Id.)

Scott further testified that he met with Petitioner on April 18, 2019 at the Sherburne County Jail, during which time they discussed whether Scott should file a notice of appeal as part of a discussion as to whether Petitioner should make a request under the prisoner transfer treaty as Petitioner was a dual citizen of Italy and Brazil.  Scott explained that Petitioner could not make that request until after his legal remedies had run out, including his appeal.  Scott explained that filing an appeal would delay his ability to make the prisoner transfer request.  Petitioner had indicated that he wanted to know more from someone familiar with the prisoner transfer process in Brazil, and what effect filing a notice of appeal would have on his transfer request to Brazil.  Therefore, at the end of this meeting, Petitioner had not made a final decision as to whether he wanted Scott to file a notice of appeal.  Instead, Petitioner asked Scott to contact his wife, so she could find out whether filing an appeal, that he would likely lose, would make any difference if he transferred to Brazil.  Scott did so by email and attached the letter he had previously sent to Petitioner.  (Doc. No. 153-1, Ex. 2.)

7

Petitioner's wife responded the same day, stating she would contact someone in Brazil.  (Id. Ex. 3.)

Scott testified that on April 24, 2019, the deadline for filing a notice of appeal, he had not heard back from Petitioner or his wife as to whether to file the notice, so he sent Petitioner's wife an email inquiring as to Petitioner's decision. In the email he further explained that if Petitioner wanted to appeal, that she should let him know immediately, and that Petitioner was responsible for the $455 filing fee.  (Id. Ex. 4.)  Scott also asked to be informed of whether Petitioner had decided not to file a notice of appeal.  (Id.)

Later that same day, Petitioner's wife responded by email, stating she had not heard anything from Brazil, but that she was going to talk with Petitioner later that day.  (Id.)  That same night, Petitioner's wife emailed Scott informing him that Petitioner had decided not to file a notice of appeal.  (Id. Ex. 5.) Because Petitioner never affirmatively told Scott to file a notice of appeal, and because his wife confirmed that Petitioner did not want to file a notice of appeal, Scott did not file such a notice.

On cross-examination, Scott confirmed that he did not inform Petitioner that if he qualified for a court-appointed lawyer, that the filing fee would be

8

waived. Scott further testified that while the Court ordered him to file a notice of appeal at the sentencing hearing, the Court did not have the right to direct him to file such an appeal unless his client wanted him to do so.

Petitioner did not testify at the evidentiary hearing.

In his post-hearing brief, Petitioner now argues that Scott was ordered to file the notice of appeal at the sentencing hearing, therefore Scott's discussions with Petitioner regarding the notice of appeal following sentencing are irrelevant in light of the Court's clear order that he file a notice of appeal.

When viewed in context, this argument has no merit. At sentencing, the Court informed Petitioner of his right to appeal and to his right to an attorney on that appeal. He was also informed that he could keep Scott as counsel, hire a new attorney or request a court-appointed attorney if he could not afford to pay counsel. The Court did not, however, order Scott to pay the filing fee without assurances from Petitioner that he wanted Scott to be his attorney on appeal and without a fee arrangement.

Petitioner was given the opportunity at the evidentiary hearing to testify in support of his petition, but he declined that opportunity. As a result, the record contains no evidence as to Petitioner's understanding of the Court's comments at

sentencing, and whether he believed Scott would file a notice of appeal regardless of the fee issue. Accordingly, the Court finds that Petitioner has failed to demonstrate that he is entitled to relief on this basis.

In addition, the purpose of the evidentiary hearing was to allow the Court the opportunity to determine the credibility of Petitioner's claim that he asked counsel to file a notice of appeal on his behalf and that counsel failed to do so. By declining to testify at the hearing, Petitioner failed to demonstrate the credibility of such claim in light of the evidence presented to the contrary. See Barger v. United States, 204 F.3d 1180, 1182 ("A bare assertion by the petitioner that she made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition.")

### 2. Misrepresentation of the Law

Petitioner further claims that counsel was ineffective when he misrepresented to Petitioner the intent requirement underlying his conviction. Petitioner claims that where a defendant does not intend to cause any harm to an alleged victim, there is no scheme to defraud. In addition, Petitioner argues the factual basis underlying his guilty plea includes no admission by Petitioner that

he intended to harm his victims. Rather, his intent was to provide financial gains to the victims. Petitioner additionally argues these facts show he is actually innocent of the crime of conviction.

Contrary to Petitioner's claims, the law in the Eighth Circuit provides that an intent to repay a victim, or an honestly held belief that a fraud scheme would not result in a loss to the victim, does not negate the intent to defraud. See e.g., United States v. DeRosier, 501 F.3d 888, 893, 894 (8th Cir. 2007) ("We have found no Eighth Circuit case law that supports Appellant's contention that having the intent to repay a loan negates the intent to defraud when the loans are acquired through false representations and the defendant is the recipient of the loan proceeds."); United States v. Hagen, 917 F.3d 668, 673 (8th Cir. 2019) (in response to defendant's claim that he was a naive businessman with no intent to defraud, court held "when a defendant's victims 'suffered some tangible loss – as they did here – the scheme itself often serves as evidence of a defendant's intent to defraud.'")

In addition, the Plea Agreement contains an extensive factual basis which describes the scheme to defraud utilized by Petitioner and his coconspirators to solicit monies from investors by misrepresenting how their investment would be

used. (Doc. No. 55, ¶ 2.) During his change of plea hearing, Petitioner admitted to his participation in a scheme by which the conspirators solicited investors by telling them their investment would be used to factor accounts receivable in Brazil, but that the money was not used for that purpose. Instead, it was used to pay old investors, pay commissions to brokers and to operate other companies. (Doc. No. 147 (Plea Tr. at 28).) Petitioner further admitted that the investors were not told their investments were used for such purposes. (Id. at 28-29.) Accordingly, Petitioner has failed to demonstrate that Scott's advice was contrary to law and therefore unsound. Furthermore, Petitioner cannot show prejudice, as he admitted to sufficient facts to support his conviction as to Count 1 of the Indictment.

### B.     Actual Innocence

"'Actual innocence' means factual innocence, not mere legal insufficiency." Jimerson v. Payne, 957 F.3d 916, 929 (8th Cir. 2020) (quoting Bousley v. United States, 523 U.S. 614, 623 (1998)). For a claim of actual innocence to be cognizable in a § 2255 petition, the claim must be based on new and reliable evidence and that "it is more likely than not that no reasonable juror would have convicted

him in light of the new evidence." Bannister v. Delo, 100 F.3d 610, 615 (8th Cir. 1996) (citing Schlup v. Delo, 513 U.S. 298, 322 (1995)).

Petitioner has not presented any new and reliable evidence in support of his claim of actual innocence. Instead, he argues the facts upon which he admitted in his Plea Agreement and during his plea hearing, were insufficient to establish guilt as to the crime of conviction, conspiracy to commit mail fraud. A claim of actual innocence, however, applies only to claims of factual innocence, not legal innocence. See Anderson v. United States, 25 F.3d 704, 707 (8th Cir. 1994) (finding the miscarriage of justice exception to procedural default applies only to claims of factual innocence, not legal innocence). As a result, Petitioner has failed to demonstrate that he is entitled to relief based on his claim of actual innocence.

## IV.     Certificate of Appealability

With regard to the procedural rulings in this Order, the Court concludes that no "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right;" nor would "jurists of reason . . . find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). With regard to the decision on the

merits, the Court concludes that no "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Id.</u>

**IT IS HEREBY ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255 [Doc. No. 141] is **DENIED;** and

2. No Certificate of Appealability shall issue.

**LET JUDGMENT BE ENTERED ACCORDINLY.**

Date: January 5, 2021

                                            s/ Michael J. Davis
                                            Michael J. Davis
                                            United States District Court